COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| EX PARTE: MARCOS RAUL ARREDONDO. | § | No. 08-11-00327-CR |
| | § | Appeal from the |
| | § | 409th District Court |
| | § | of El Paso County, Texas |
| | § | (TC# 20050D04168-409-1) |
| | § | |

## **O P I N I O N**

Appellant Marcos Raul Arredondo appeals from the trial court's denial of his application for writ of habeas corpus pursuant to Article 11.072 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072 (West 2005). In a single issue, Appellant asserts that the trial court erred in denying him habeas relief because ineffective assistance of counsel rendered his guilty plea involuntary. We affirm the trial court's order denying habeas corpus relief.

### FACTUAL AND PROCEDURAL BACKGROUND

In January 2010, as part of a plea agreement, Appellant pleaded guilty to three counts of indecency with a child by contact. The trial court accepted Appellant's plea, deferred the adjudication of his guilt, and placed him on ten years' community supervision. In July 2011,

Appellant filed an application for a writ of habeas corpus alleging that his plea of guilty was involuntary because his trial counsel erroneously advised him that he would only be required to register as a sex offender for ten years after completing his probation. He further alleged that he would not have pleaded guilty if he had known that the sex offender registration requirement was for life. In support of his writ application, Appellant attached his own affidavit and affidavits from John L. Williams, his trial counsel, and Carlos Mendoza, a West Texas Community Supervision and Corrections Department employee. As additional support for his writ application, Appellant attached a non-prosecution affidavit he obtained from the complainant after he had pleaded guilty.

In his supporting affidavit, Appellant stated that he did not want to enter a plea of guilty and that he and his attorney were "terrified of the thought of [Appellant] having to do prison time." Appellant's attorney advised him that he believed that the sex offender registration statute required reporting for ten years after probation was completed. Appellant asserted that the length of the registration was a vital fact in his decision to plead guilty. He asserted that if his attorney had correctly advised him that the sex offender registration was for life, he would not have pleaded guilty. Similarly, in John L. Williams' affidavit, Williams stated that he was concerned about a jury convicting Appellant based on his appearance. After discussing the possible plea agreement with the State, Williams looked up the sex offender registration requirement and "felt" that the statute called for a ten-year registration period after probation was completed. Williams informed Appellant that the sexual offender registration period was for ten years after probation was completed. The length of the registration period was a vital fact to his client in determining whether to enter a plea.

2

When Appellant was ready to sign the plea paperwork, the paperwork initially read "reporting for life," but Appellant was unwilling to sign with such wording. The paperwork was revised to read "registration as required by law." After Appellant entered his guilty plea, Appellant met with Carlos Mendoza to go over the conditions of probation. Appellant did not want to sign the probation papers which indicated that sex offender registration was for life. Williams told Appellant he thought the paperwork was wrong, but explained to him that he had to sign the paperwork. Williams told Appellant that he would conduct the necessary research to correct the registration time. Later, Williams reviewed the entire statute and realized that he had erroneously advised Appellant about the length of the registration period. Williams believed Appellant would not have pleaded guilty if he had correctly advised Appellant that the statute called for lifetime registration as a sex offender.

According to the affidavit of Carlos Mendoza, Mendoza reviewed the terms and conditions of probation with Appellant. Appellant did not want to sign the sex offender registration papers and was very concerned with the length of registration. Appellant stated that his attorney had told him that "registration was only for 10 years after probation ended and not for life." When Williams was summoned, Williams told Mendoza that he thought the probation material was wrong. Williams advised Appellant to sign the paperwork although he thought the portions regarding the length of registration were not correct.

Without conducting a hearing, the trial court denied Appellant's application for habeas relief, and issued written findings of fact and conclusions of law. This appeal followed.

## DISCUSSION

In his sole issue on appeal, Appellant challenges the trial court's denial of his application

for a writ of habeas corpus. He asserts that the trial court's decision was erroneous and that he demonstrated that his guilty plea was rendered involuntary due to the ineffective assistance of counsel.

*Standard of Review*

When reviewing a trial court's decision to grant or deny habeas relief, we apply an abuse of discretion standard and we review the evidence in the light most favorable to the trial court's ruling. *Kniatt v. State,* 206 S.W.3d 657, 664 (Tex.Crim.App. 2006). A trial court abuses it discretion when it acts without reference to any guiding rules or principles or when it acts arbitrarily or unreasonably. *Ex parte Ali*, 368 S.W.3d 827, 830 (Tex.App. – Austin 2012, pet. ref'd); *Ex parte Wolf*, 296 S.W.3d 160, 166 (Tex.App. – Houston [14th Dist.] 2009, pet. ref'd).

In article 11.072 post-conviction habeas corpus cases, the trial court is the sole finder of fact. *Ex parte Garcia*, 353 S.W.3d 785, 788 (Tex.Crim.App. 2011). As the fact finder, the trial court may accept some, all, or none of a witness's testimony. *See Ex parte Peterson*, 117 S.W.3d 804, 819 n.68 (Tex.Crim.App. 2003), *overruled on other grounds by Ex parte Lewis*, 219 S.W.3d 335 (Tex.Crim.App. 2007). We give almost total deference to the trial court's factual findings when supported by the record, particularly when the factual findings are based on credibility and demeanor. *Ex parte Amezquita*, 223 S.W.3d 363, 367 (Tex.Crim.App. 2006); *Ex parte Thompson*, 153 S.W.3d 416, 417-18 (Tex.Crim.App. 2005). Furthermore, we afford almost total deference to the trial court's application of law to the facts, also known as mixed questions of law and fact, if the resolution of the ultimate question turns on an evaluation of credibility and demeanor. *Ex parte Peterson*, 117 S.W.3d at 819. However, we review *de novo* those mixed questions of law and fact that do not depend upon evaluation of credibility and

4

demeanor. *Id*.

## Ineffective Assistance of Counsel

In order to qualify for habeas corpus relief based on ineffective assistance of counsel, the applicant must show that counsel's representation fell below an objective standard of reasonableness, and that there is a reasonable probability that but for counsel's deficient representation the outcome would have been different. *Strickland v. Washington*, 466 U.S. 668, 669, 104 S.Ct. 2052, 2055-56, 80 L.Ed.2d 674 (1984); *Ex parte Chandler*, 182 S.W.3d 350, 353 (Tex.Crim.App. 2005). The applicant bears the burden of proving counsel's ineffective assistance by a preponderance of the evidence. *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex.Crim.App. 2011), *cert. denied*, 131 S.Ct. 3073, 180 L.Ed. 2d 896 (2011). Under the two prong *Strickland* analysis, challenges of ineffective counsel when rendering a guilty plea must first show that counsel did not act as a reasonable, competent attorney. *Strickland*, 466 U.S. at 669, 104 S.Ct. at 2055-56; *See Hill v. Lockhart*, 474 U.S. 52, 58-59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). The second prong establishing prejudice must show that counsel's ineffective representation affected the plea process to the extent there is a reasonable probability that but for the representation, the applicant would not have pleaded guilty and would have insisted on continuing to trial. *Strickland*, 466 U.S. at 669, 104 S.Ct. at 2055-56; *see Hill*, 474 U.S. at 58-59, 106 S.Ct. at 370.

Appellant asserts that his guilty plea was involuntary because his counsel was ineffective in advising him that he would only be required to register as a sex offender for ten years after the completion of community supervision, and had he known that he would actually be required to register for life, he would not have pleaded guilty. Appellant's main evidence in support of his

5

assertion is the Williams' affidavit. Williams admits in his affidavit that he advised Appellant both the evening before the hearing and the morning of that based on his research of the statute, he believed the registration requirement would be for ten years after community supervision was completed. He also maintains that he spoke with Assistant District Attorney Griffith and received her opinion and that of another Assistant District Attorney that registration was for life, but still believed he was correct in thinking in Appellant's case it would be for ten years following community supervision. Williams and Griffith approached the trial court about this issue and it suggested that the plea paperwork be changed to reflect that Appellant would register "as required by law." Appellant claims that based on the language, "as required by law," and the advice of counsel, he believed he would only be required to register for ten years after his probation was completed and did not find out otherwise until he met with his probation official, Mendoza, and was told the registration would be for life. He refused to sign the probation paperwork and Williams came to talk to him. Williams told Appellant and Mendoza that he thought the paperwork was wrong but to go ahead and sign it and he would find out how to fix it at a later time.

Although this information is in the affidavits of Appellant, Williams, and Mendoza, it does not as Appellant states, make it clear that Williams misadvised his client. *See Shanklin v. State,* 190 S.W.3d 154, 167 (Tex.App. – Houston [1st Dist.] 2005), *pet. dism'd*, 211 S.W.3d 315 (Tex.Crim.App. 2007) (the court is not required to believe factual statements contained in an affidavit, even if there is no evidence to controvert it). The trial court, in its findings of fact determined that the attestations of Williams and Appellant were not credible in their entirety. Furthermore, the trial court found:

13. The record reflects that the applicant signed additional written admonishments, acknowledging that he understood that the sex-offender-registration laws contained therein would apply to him and that he understood that the laws contained therein was not inclusive of all the laws he would be required to follow after pleading guilty.

14. The sex-offender-registration admonishment form also stated that "[t]he duty to register for a person with a reportable conviction or adjudication for a sexually violent offense or for an offense under Section 25.02, 43.05(a)(2), Penal Code, ends when the person dies."

. . .

18. At the guilty-plea hearing, the applicant acknowledged that he understood the contents of the guilty-plea papers and the sex-offender-registration admonishment forms.

19. At the guilty-plea hearing, Attorney Williams testified that he explained the guilty-plea papers and the sex-offender-registration admonishment forms to the applicant.

. . .

45. This Court does not believe that Attorney Williams, who is an experienced criminal-defense attorney, would not have known that by pleading guilty to indecency with a child by contact, the applicant would be required to register as a sex offender for life.

. . .

58. In her affidavit, Ms. Griffith states with absolute certainty that at no point through all of her discussions regarding the registration issue did she ever have or express any hesitation, uncertainty, or confusion in her position that the sex-offender-registration requirement for indecency with a child by contact was for life.

. . .

61. In her affidavit, Ms. Griffith attests that Mr. Acosta unequivocally agreed with her that the registration requirement was for life, which she related to Attorney Williams prior to the applicant's guilty plea.

. . .

7

67. This Court finds the attestations contained within Ms. Griffith's affidavit to be credible.

. . .

94. This Court finds no credible evidence that affirmatively proves that Attorney Williams misadvised the applicant of the lifetime sex-offender-registration requirement.

We conclude that these factual findings are based on credibility and demeanor and are supported by the record. As such, we give almost total deference to the trial court and adopt its determination that the record does not affirmatively demonstrate that Appellant was misadvised by counsel. *Ex parte Amezquita*, 223 S.W.3d at 367; *Ex parte Thompson*, 153 S.W.3d at 417-18.

Appellant claims that he was prejudiced by ineffective counsel because he would not have pleaded guilty had he known that the registration requirement was for the rest of his life. He points to correlating information given by Williams that Appellant was concerned with the registration period and was unwilling to sign the plea agreement when the language listed registration for life. Williams opines that Appellant would not have pleaded guilty had he known with certainty that Appellant would be required to register as a sex offender for the rest of his life. The trial court found evidence that there were other vital factors for Appellant to plead guilty, specifically a desire to avoid trial and prison time. It pointed out that over a time span of approximately four years, Appellant moved nine times to continue the case. Additionally, the trial court found:

103. In his affidavit, the applicant attests that Attorney Williams told him that he was concerned about the makeup of the prospective jury panel and that he believed that if the applicant was convicted, the jury would give the applicant prison time.

8

104. In his affidavit, the applicant attests that "I did not want to plead guilty but my attorney and I were terrified of the thought of me having to do prison time."

105. In his affidavit, Attorney Williams attests that he was very unhappy with the makeup of the prospective jury panel and that he was concerned about a jury convicting the applicant based on his appearance (tattoos, piercings, size, and haircut).

106. In her affidavit, Ms. Griffith attests that the implication or understanding by all the parties at the time the applicant pleaded guilty was that the applicant, who clearly wished to avoid a trial on the charged offenses and possible prison time, was acquiescing to whatever length of time the law required, even if that meant lifetime registration.

.    .    .

109. This Court finds that the applicant's fear of prison time was a substantial, if not primary, consideration in his decision to plead guilty.

.    .    .

113. This Court does not find a reasonable probability that had the applicant known of the lifetime sex-offender-registration requirement, he would have insisted on going to trial on three second-degree-felony counts with a punishment range of 2 to 20 years' confinement each and subsequent lifetime registration as a sex offender.

The trial court ultimately came to the determination that Appellant's assertion that he would not have pleaded guilty but for counsel's misinformation regarding the registration requirement was not credible and a decision to reject the advantageous plea bargain and proceed to trial would not have been rational. We agree with the trial court's determination that it would not have been rational under the circumstances for Appellant to reject the plea bargain and proceed to trial where he risked being sentenced between two and twenty years in prison for each of three charges and having to adhere to the same lifetime registration requirement. *Ex parte Ali*, 368 S.W.3d at 840. As such, Appellant did not suffer prejudice by the alleged occurrence of ineffective counsel. *Hill*, 474 U.S. at 58, 106 S.Ct. at 370. Accordingly, we conclude that

9

the trial court did not abuse its discretion in determining that Appellant failed to prove by a preponderance of the evidence both that counsel was ineffective and that but for the ineffective counsel, the outcome would have been different. *Strickland*, 466 U.S. at 669, 104 S.Ct. at 2055-56; *Kniatt*, 206 S.W.3d at 664; *Ex parte Martinez*, 330 S.W.3d at 901; *Ex parte Peterson*, 117 S.W.3d at 819. Issue One is overruled.

The trial court certified Appellant's right to appeal in this case, but the certification does not bear Appellant's signature indicating that he was informed of his rights to appeal and to file a pro se petition for discretionary review with the Texas Court of Criminal Appeals. *See* TEX. R. APP. P. 25.2(d). The certification is defective, and has not been corrected by Appellant's attorney, or the trial court. To remedy this defect, this Court ORDERS Appellant's attorney, pursuant to TEX. R. APP. P. 48.4, to send Appellant a copy of this opinion and this Court's judgment, to notify Appellant of his right to file a pro se petition for discretionary review, and to inform Appellant of the applicable deadlines. *See* TEX. R. APP. P. 48.4, 68. Appellant's attorney is further ORDERED, to comply with all of the requirements of TEX. R. APP. P. 48.4.

## CONCLUSION

We affirm the trial court's denial of habeas corpus relief.


GUADALUPE RIVERA, Justice

December 27, 2013

Before McClure, C.J., Rivera, and Rodriguez, JJ.

(Do Not Publish)